**LEWIS BRISBOIS BISGAARD & SMITH LLP**
TONY M. SAIN, SB# 251626
E-Mail: Tony.Sain@lewisbrisbois.com
TORI L. N. BAKKEN, SB# 329069
E-Mail: Tori.Bakken@lewisbrisbois.com
ABIGAIL J. R. McLAUGHLIN, SB# 313208
E-Mail: Abigail.McLaughlin@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants,
THE CITY OF CHULA VISTA, Chief
ROXANA KENNEDY, Officer
ALFONSO PERDOMO, Officer ROMAN
BUYSON, Officer THOMAS LUHTA,
and Sergeant EVAN LINNEY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARIA ENRIQUEZ, ALEYNA ENRIQUEZ, MIGUEL ENRIQUEZ, and THE ESTATE OF CARLOS ENRIQUEZ,

Plaintiff,

vs.

THE CITY OF CHULA VISTA, ROXANA KENNEDY, in her individual capacity, ALFONSO PERDOMO, ROMAN BUYSON, THOMAS LUHTA and DOES 1-25,

Defendant.

Case No. 25CV3832 BTM DEB
[*Hon. Barry Ted Moskowitz, Dist. Judge; Hon. Daniel E. Butcher, M. Judge*]

**[*DISCOVERY MATTER*]**

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF WITHHELD ADMINISTRATIVE INVESTIGATIONS REGARDING DISSIMILAR NON-INCIDENTS [DKT. 33]**

**TO THE HON. COURT, PLAINTIFFS, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendants THE CITY OF CHULA VISTA, Chief ROXANA KENNEDY, Officer ALFONSO PERDOMO, Officer ROMAN BUYSON, and Officer THOMAS LUHTA ("Defendants") hereby submit their Opposition to Plaintiffs' Motion to Compel Production of Withheld Internal Affairs, Watts Incident, and Nunis Incident Records [Dkt. 33] and state as follows:

# TABLE OF CONTENTS

**Page**


1. INTRODUCTION & SUMMARY OF THE ARGUMENT. .......... 1
2. STATEMENT OF FACTS .......... 1
   A. The Underlying Police Shooting Incident In This Case. .......... 1
   B. Defendants Generally Agree with Plaintiffs' Summary of the Instant Dispute. .......... 2
   C. Plaintiffs Erroneously Assume that Defense Counsel Did Not Personally Review the Withheld IA Investigation Records. .......... 4
   D. The Watts Incident is Not a Prior Fatal Use of Force Incident. .......... 5
   E. The Nunis Incident is Not a Prior Fatal Use of Force Incident. .......... 6
3. LEGAL STANDARD: DISCOVERY AS TO DISSIMILAR PRIOR POLICE INCIDENTS IS IRRELEVANT UNDER RULE 26. .......... 7
   A. Discovery Must Be Proportional to the Needs of the Case. .......... 7
   B. In Police Use of Force Cases, Courts Generally Only Order Production of Complaints Or Records of Prior Incidents That Involve Allegations of Force Similar To The At-Issue Incident Force, or Allegations of Dishonesty. .......... 8
   C. The Rationale Behind This Similar-Incident Discovery Restriction Is That Officer Personnel Records Are Subject To The Federal Privacy Privilege. .......... 10
4. THE WATTS INCIDENT IS NOT SUBSTANTIALLY SIMILAR TO THIS MATTER AND IT IS THUS NOT DISCOVERABLE. .......... 10
5. THE NUNIS INCIDENT IS NOT SUBSTANTIALLY SIMILAR TO THIS MATTER AND IT IS THUS NOT DISCOVERABLE. .......... 12
6. DEFENDANT OFFICER LUHTA'S APRIL 9, 2020 K-9 DEPLOYMENT IS NOT SUBSTANTIALLY SIMILAR TO THIS MATTER. .......... 14
7. THE OTHER WITHHELD I.A. INVESTIGATION RECORDS DO NOT CONTAIN RELEVANT MATERIAL. .......... 15
   A. Defense Counsel Personally Reviewed the Withheld Records and Confirmed None of the Investigations Included Allegations or Even Inferences of Dishonesty. .......... 15
   B. The Remaining Personnel Records Unrelated to Officer Uses of Force Are Also Privacy Privileged and Irrelevant. .......... 17
8. CONCLUSION. .......... 18

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bartolome v. City & Cnty. of Honolulu*, 2008 WL 2736016 (D. Haw. 2008) ............ 8

*Baugh v. Martin*, 2023 WL 2628611 (C.D. Cal. Feb. 9, 2023 ............ 18

*Centeno v. City of Fresno*, 2016 WL 7491624 (E.D. Cal. Dec. 29, 2016) ....... 7, 9, 10

*Chatman v. Felker*, 2009 WL 173515 (E.D. Cal. Jan. 23, 2009) ............ 8

*Estate of Najera-Aguirre v. County of Riverside*, 2019 WL 689894 (C.D. Cal. Aug. 22, 2019) ............ 9, 10

Fed. R. Evid. 26 ............ 7

*Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002) ............ 8

*Han v. Futurewei Techs., Inc.*, 2011 WL 4344301 (S.D. Cal. Sept. 15, 2011) ......... 15

*Henderson v. Lizzaraga*, 2020 WL 6820775 (E.D. Cal. Nov. 20, 2020) ............ 9

*Hernandez v. Cate*, 2013 WL 12497042 (C.D. Cal. Dec. 12, 2013) ............ 18

*Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) ............ 10

*Niewzal v. City of Simi Valley*, 2016 WL 11758772 (C.D. Cal. Apr. 6, 2016) ........... 9

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ............ 7

*Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594 (D. Nev. 2016) ............ 8

*Roettgen v. Foston*, 2016 U.S. Dist. LEXIS 60047 (S.D. Cal. May 4, 2016) ............ 8

*Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) ............ 10

*Whitely v. CDCR*, 2020 WL 8455139 (C.D. Cal. Sept. 25, 2020) ............ 9

*Winn v. Cappalla*, 2024 WL 5275070 (C.D. Cal. Sept. 13, 2024) ............ 18

**RULES**

Fed. R. Civ. P. 26 ............ 7

Fed. R. Civ. P. 37 ............ 8

Fed. R. Evid. 401 ............ 7

## 1. INTRODUCTION & SUMMARY OF THE ARGUMENT.

Plaintiffs' Motion to Compel should be denied for the following reasons:

First, the at-issue records pertain to incidents that are not substantially similar to the disputed incident in this matter and, thus, are not relevant and/or discoverable in this matter. Specifically, none of the at-issue records pertain to incidents involving a gun-armed suspect where Chula Vista Police Department ("CVPD") officers deployed a K-9, deployed a bean bag round, or used firearms as lethal force – and one of the administrative files sought (*Nunis*) pertains to a use of non-deadly restraint force (*not* impact weapons or firearms) that a jury found to be reasonable: and thus such records cannot constitute evidence pertaining to any policy or widespread custom/practice of using excessive force (deadly or otherwise) or any related supervisory defects.

Second, the at-issue records do not pertain to Defendant Officers' dishonesty. Defense counsel personally reviewed the at-issue records and attests that the at-issue records are not relevant and/or discoverable in this matter because none of the withheld documents contained any inference that could be drawn related to dishonesty.

Thus, because Defendants properly withheld the at-issue records because they are not relevant and/or discoverable in this matter, this Court should issue an Order declining to require Defendants to produce the same.

## 2. STATEMENT OF FACTS.

### A. The Underlying Police Shooting Incident In This Case.

On April 19, 2025, the wife of Carlos Enriquez called the police to report that her husband, a military veteran, had threatened her and her children with a gun. Chula Vista Police Department ("CVPD") officers under on-scene supervisor Defendant Sergeant Evan Linney responded to the scene: including (among others) Officer Alfonso Perdomo (who took the lead in suspect communications and de-escalation

efforts, but was later one of the shooters), Officer Thomas Luhta (another shooter), and Officer Roman Buyson (another shooter).

During the course of about 17 minutes of attempted de-escalation, where Officer Perdomo repeatedly ordered and pleaded with Mr. Enriquez to put down the gun, and offered Mr. Enriquez various services to aid him, Mr. Enriquez eventually made threatening movements with the gun. At one point, to try to redress the deadly threat, CVPD Officer Amaro tried to overcome the threat by deploying a single non-deadly beanbag impact projectile to Mr. Enriquez's chest.

Although that momentarily separated Mr. Enriquez from his gun, despite Officer Perdomo advising Mr. Enriquez that he was not shot/harmed and to forego touching the gun nearby, after making statements to the effect of "shoot me," Mr. Enriquez then recovered the gun and began raising it toward officers at the scene. This prompted Officers Perdomo, Luhta, and Buyson to fire their guns in defense of self and others.

Once Mr. Enriquez no longer appeared to be an immediate deadly threat, and gunshots ended, once he was now laying on the ground, Mr. Enriquez still had his hand on the gun – despite commands to the contrary. As a result, to overcome this apparent threat, CVPD officers twice tried to separate Mr. Enriquez from the gun-threat by use of a police dog (K-9): however, only the second attempted K-9 deployment, by Officer Perdomo, successfully separated Mr. Enriquez from his gun.

Once the area around Mr. Enriquez then appeared to be secured from a deadly threat, CVPD officers quickly approached Mr. Enriquez to provide medical aid: however, he later died from his gunshot wounds.

**B. Defendants Generally Agree with Plaintiffs' Summary of the Instant Dispute.**

Generally, Defendants are in agreement with Plaintiffs' statement of facts regarding the at-issue discovery dispute. Plaintiffs' served discovery requests requesting records pertaining to: (1) a October 18, 2018 incident involving Chula

Vista Police Department ("CVPD") officers, including Defendant Officer Thomas Luhta, and Jason Watts (the "Watts Incident") where CVPD officers deployed TASERs and pepper spray and used baton hits, punches, and manual restraint, including use of a WRAP device and a spit hood; (2) a March 13, 2020 incident involving CVPD officer, including then-Agent (now Sergeant) Defendant Evan Linney (the "Nunis Incident") where a man having a psychological episode became resistive and then assaultive, and was ultimately restrained in a WRAP device and rear handcuffs, with a spit hood on his head, before being transferred to the care of paramedics; (3) the entire personnel file of Defendant Officer Alfonso Perdomo; and (4) the entire personnel file of Defendant Officer Thomas Luhta. [Dkt. 33 at 3:6-4:20.]

As to Defendant Officer Perdomo's personnel file, Defendants are withholding three internal affairs investigation files, titled "CVPD Complaint-Dispositions" ("IA Investigations") regarding: (1) a May 25, 2024 incident involving allegations that Officer Perdomo failed to activate his body worn camera and did not follow a supervisor's instruction; (2) a January 17, 2025 incident involving a traffic collision that occurred while Officer Perdomo was on-duty in his patrol vehicle; (3) a October 17, 2018 incident involving Officer Perdomo's verification that a traffic violation for tinted windows had been corrected by a third-party. As to Defendant Officer Luhta's personnel file, Defendants are withholding CVPD Complaint-Dispositions regarding: (1) a April 9, 2020 incident involving Officer Luhta's deployment of a K-9 on a subject suffering from mental illness; (2) a February 13, 2020 incident involving Officer Luhta's recording of a conversation between two other CVPD officers; and (3) a July 23, 2018 incident involving Officer Luhta backing into a safety pole in his patrol vehicle – as well as all other personnel file records that have nothing to do with any investigations of officer misconduct. [*Id.* at 4:21-5:14.]

As stated in Defendants' objections in Defendants' responses to Plaintiffs' Requests for Production, Defendants are withholding these other-incident records on

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

the basis that such are not discoverable in this matter – *i.e.* not relevant to the proportional needs of Plaintiffs' case within the meaning of Federal Rule of Civil Procedure 26 – because the other-incidents are not substantially similar to the at-issue incident in this matter involving decedent Carlos Enriquez and such other-incidents do not pertain to any findings, inferences, or references to officer dishonesty. [Dkt. 33-1, 33-2.]

That being said, though Plaintiffs generally accurately described the subject discovery dispute, Plaintiffs incorrectly assume that defense counsel did not personally review the withheld IA Investigation records and improperly describe the Watts and Nunis Incidents as "prior fatal use-of-force incidents." [Dkt. 33 at 7:10-11.] Such description is particularly disingenuous as to the Nunis Incident: where, in April 2024, a federal jury in this very district returned a verdict showing that the use of force was non-deadly and reasonable. [McLaughlin Decl., ¶8, Exh. B.]

### C. Plaintiffs Erroneously Assume that Defense Counsel Did Not Personally Review the Withheld IA Investigation Records.

In Plaintiffs' introduction, Plaintiffs state that, although the Court "requested that Defendants personally review the documents to ascertain if they contain any hint of concealment or dishonesty," "[t]hey appear not to have done so, but instead only relied on the representation of their client." [Dkt. 33 at 2:16-20.] Thereafter, in Plaintiffs' statement of facts, they reference a statement in defense counsel's email correspondence about the discovery dispute (but do not actually attach the e-mail)[1] that defense counsel spoke to their client and "can confirm, per the Court's request, that none of the withheld IA investigations involve allegations or inferences of dishonesty, so we are not planning to produce them at this time." [*Id.* at 5:21-24; Dkt.

[1] The relevant e-mail correspondence is attached as Exhibit "A", as verified by the concurrently filed Declaration of Abigail McLaughlin. It is unknown why Plaintiffs chose to take defense counsel's statement out of context and not provide the actual email.

33-3 at ¶4.] Defense counsel's statement was in response to Plaintiffs' counsel's e-mail recalling that defense counsel planned to discuss the Court's inclinations at the Informal Discovery Conference ("IDC") with their client and then the Parties would meet and confer. [McLaughlin Decl., ¶2, Exh. A at p. 2.] Thus, defense counsel responded regarding Defendants' position after such discussions and to provide more information to allow for the Parties' to meet and confer further. [*Id.* at p. 1.] In fact, in response to Plaintiffs' request for availability to further meet and confer, Defendants offered Wednesday and requested Plaintiffs' available times, but never received a response prior to Plaintiffs' filing of the subject Motion to Compel. [*Id.*; McLaughlin Decl., ¶3.]

If Plaintiffs had responded – whether by seeking clarification as to who reviewed and made the determinations regarding the withheld IA Investigations or by setting a time for the meet and confer – Defendants would have confirmed that defense counsel *had* personally reviewed the IA Investigations and determined that none of the withheld documents contained any inference that could be drawn related to dishonesty. [McLaughlin Decl., ¶4.] Thus, Plaintiffs' erroneous assumption otherwise should be disregarded by this Court.

**D. The Watts Incident is Not a Prior Fatal Use of Force Incident.**

Defendants do not dispute that the Watts Incident involved uses of force by CVPD officers that included multiple TASER deployments, pepper spray, baton hits, punches, and manual restraint. [McLaughlin Decl., ¶5.] Defendant Officer Luhta personally deployed his TASER and applied manual restraint, including assisting with applying a WRAP device. [*Id.*] However, *none* of the uses of force in the Watts Incident involved a beanbag deployment, a K-9 deployment, or an officer-involved shooting ("OIS"). [*Id.*]

Moreover, there is *no* evidence that any police use of force, including Officer Luhta's, resulted in Mr. Watts' death. Rather, Mr. Watts' cause of death was methamphetamine intoxication and excited delirium. [*Id.*, ¶6.] Moreover, Mr. Watts

did not die until eight hours *after* the CVPD's uses of force; where, in the interim, he was medically cleared to be taken to jail, then transported to a hospital for evaluation after presenting with altered mental status, at which point he was given Ativan to calm him down, and then he suffered cardiac arrest. [*Id.*] Thus, the Watts Incident cannot be a prior "fatal" use of force incident where it has not and cannot be established that CVPD use of force resulted in Mr. Watts' death.

**E. The Nunis Incident is Not a Prior Fatal Use of Force Incident.**

Defendants also do not dispute that the Nunis Incident involved uses of force by CVPD officers, but those uses of force, including all uses of force by Defendant Sergeant (then-Agent) Linney, were *only* manual restraint. [McLaughlin Decl., ¶7.] Specifically, Mr. Nunis was subjected only to manual restraint/grappling, and the use of two restraint devices (rear handcuffs and the WRAP "full body" restraint device) and use of a spit sock, after Mr. Nunis had violently resisted officers' restraints (and defied their commands) for over 10 minutes. [*See id.*] Mr. Nunis was *not* subjected to any blows or impact weapons; *no* K-9 was deployed on him; and there was *no* shooting. [*Id.*] Additionally, unlike the Enriquez Incident, then-Agent Linney was *not* the on-scene supervisor/sergeant for the Nunis Incident. [*See id.*]

Further, Mr. Nunis did not begin experiencing a medical emergency until ~8 minutes after *any* CVPD officers' use of grappling/manual force. [*Id.*]

Moreover, the Nunis Incident was the subject of civil litigation that resulted in a full defense verdict at trial: where – after reviewing extensive evidence showing that the officers' restraint had *not* caused or contributed to Mr. Nunis' death – the jury unanimously determined that *none* of the defendant officers, including Linney, used excessive or unreasonable force or restraint on Mr. Nunis and, thus, they had not violated Mr. Nunis' constitutional rights. [McLaughlin Decl., ¶8, Exhs. B, C.] Thus, the Nunis Incident is not a prior fatal use of force incident and, as discussed in more detail below, it cannot not be used by Plaintiffs as evidence of *Monell* liability where

a jury already determined that the Nunis Incident did not involve prior excessive force or any other constitutional violations. [*See id.*]

**3. LEGAL STANDARD: DISCOVERY AS TO DISSIMILAR PRIOR POLICE INCIDENTS IS IRRELEVANT UNDER RULE 26.**

**A. Discovery Must Be Proportional to the Needs of the Case.**

The scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26(b)(1). The current Rule states:

> (b) Discovery Scope and Limits.
>
> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Relevance, however, does not establish discoverability. In 2015, a proportionality requirement was added to Rule 26.

Under the amended Rule 26, relevance alone will not justify discovery; <u>discovery must also be proportional to the needs of the case</u>. Fed. R. Evid. 26(b)(1); *Centeno v. City of Fresno*, 2016 WL 7491624, at *4 (E.D. Cal. Dec. 29, 2016). "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of

proportionality." The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." The pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. This requires active involvement of federal judges to make decisions regarding the scope of discovery. *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (quoting John Roberts, 2015 Year-End Report on the Federal Judiciary 6 (Dec. 31, 2015) (internal citations omitted)).

In moving to compel the production of documents, the moving party has the burden of demonstrating "actual and substantial prejudice" from the denial of discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); Fed. R. Civ. P. 37(a)(3)(B)(iv).

### B. In Police Use of Force Cases, Courts Generally Only Order Production of Complaints Or Records of Prior Incidents That Involve Allegations of Force Similar To The At-Issue Incident Force, or Allegations of Dishonesty.

Courts generally only order production of complaints that involve allegations of similar incidents or allegations of dishonesty. *See Roettgen v. Foston*, 2016 U.S. Dist. LEXIS 60047, *3-*12 (S.D. Cal. May 4, 2016) (rejecting request for documents about past "misconduct" but permitting discovery of complaints similar to plaintiff's allegations); *Bartolome v. City & Cnty. of Honolulu*, 2008 WL 2736016, at *13–*14, at *35-*36 (D. Haw. 2008) (finding complaints of rudeness not relevant to plaintiff's allegations of excessive force); *Chatman v. Felker*, 2009 WL 173515, at *5 (E.D. Cal. Jan. 23, 2009) (collecting cases). "Applying the distinction between discoverability and admissibility, courts have found that prior suits or disciplinary proceedings or prior civilian complaints made against the defendants and incidents of excessive force by individual defendants to be discoverable when a plaintiff raises claims of the use of force, and complaints of other misconduct to be discoverable when sufficiently

similar to claims in the complaint." *Niewzal v. City of Simi Valley*, 2016 WL 11758772, at *8 (C.D. Cal. Apr. 6, 2016) (cleaned up); *Henderson v. Lizzaraga*, 2020 WL 6820775, at *1 (E.D. Cal. Nov. 20, 2020) ("Other courts have found that prior complaints of misconduct made against a defendant are discoverable when sufficiently similar to the claims brought in the instant suit.")

For example, where plaintiffs sought all prior complaints made against a defendant for excessive force where plaintiffs were alleging that defendant used excessive force in an officer involved shooting, the Eastern District of California found that prior shootings by that officer were sufficiently similar to be discoverable, but the officer's prior use of non-deadly force, *i.e.*, manual restraint, was not sufficiently similar to be discoverable. *Centeno*, 2016 WL 7491634, at *7, *10 (citing *Gonzales v. City of Bakersfield*, 2016 WL 4474600, at *6 (E.D. Cal. Aug. 25, 2026) (finding that a plaintiff suffering injury from use of non-deadly force was not entitled to discovery of all deadly force incidents); *Cathey v. City of Vallejo*, 2016 WL 792783, at *1, 5 (E.D. Cal. Mar. 1, 2016) (in action alleging non-deadly excessive force used during arrest, discovery was limited to complaints of non-lethal excessive force involving conduct alleged to have occurred while an arrestee was in police custody)); *see also Whitely v. CDCR*, 2020 WL 8455139, at *4 (C.D. Cal. Sept. 25, 2020) (ordering defendant to produce only any misconduct or use of force appeals against defendant involving allegations of use of pepper spray or dishonesty); *Estate of Najera-Aguirre v. County of Riverside*, 2019 WL 6898944, at *4 (C.D. Cal. Aug. 22, 2019) ("While instance of Ponder's past alleged dishonesty have some relevance to Ponder's credibility as a witness, the relevance of such prior instances is diminished given the remoteness in time as to the incident, and the differences between the prior incident and the incident at issue.").

Thus, in determining discoverability of complaints or other misconduct, "[c]ourts find collateral matters which are not related to the type of incident in the case non-discoverable" because "they are not likely to make a fact at consequence in

this action more or less probable than it would be without the evidence and are therefore not relevant. Further, such discovery is not proportional to the needs of the case." *Centeno*, 2016 WL 7491634, at *5; *accord Najera*, 2019 WL 6898944, at *4.

**C. The Rationale Behind This Similar-Incident Discovery Restriction Is That Officer Personnel Records Are Subject To The Federal Privacy Privilege.**

With respect to privacy rights, federal courts recognize a constitutionally-based right of privacy that may be asserted in response to discovery requests. *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995). Resolving a claim of privacy rights requires the court to balance the need for the information sought against the privacy right asserted. *Id.*

Courts have found that the privacy rights of law enforcement records are not inconsequential. *Id.* at 616. Thus, courts should generally give some weight to the privacy rights that are protected by state constitutions or statues. *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). But these rights are balanced against the great weight afforded to federal law in civil rights cases against law enforcement. *Soto*, 162 F.R.D. at 616. Accordingly, when weighing such balance, courts consider the relevance of excessive force complaints and investigations against the expectation of privacy that defendants have in those records. *Centeno*, 2016 WL 7491634, at *16. If there is a strong similarity, courts may find that the plaintiff's need for the information outweighs the officers' privacy interest. *Id.* If not, then the officers' privacy interest outweighs the need for the information. *See id.*; *Najera*, 2019 WL 6898944, at *3.

**4. THE WATTS INCIDENT IS NOT SUBSTANTIALLY SIMILAR TO THIS MATTER AND IT IS THUS NOT DISCOVERABLE.**

Plaintiffs argue that the Watts incident is discoverable because "Jason Watts suffered from significant mental illness was unarmed, was experiencing severe psychological distress, and died after CVPD officers escalated the situation by using

pepper spray, Tasers [sic], strikes, and restraint rather than summoning PERT-trained officers or other de-escalation professionals," so "Watts is therefore highly relevant to Plaintiffs' failure-to-train, failure-to-supervise, failure-to-discipline, and *Monell* theories" based on the issue of "whether the City had notice of prior force used against a mentally ill or psychologically distressed person, how the City investigated and responded, whether the City disciplined or retained involved officers, and whether the City's response reflected a policy, custom, or practice of deliberate indifference." [Dkt. 33 at 9:11-25.]

However, the Jason Watts matter is <u>not</u> discoverable because it is not substantially similar to this matter. Per Plaintiffs' operative First Amended Complaint, at the time of the disputed incident, "Mr. Enriquez was experiencing a severe mental health crisis, exacerbated by heavy alcohol consumption." [Dkt. 24 at ¶22.] "When CVPD officers arrived at his home, Carlos Enriquez was standing outside with his hands in the pockets" and "was visibly intoxicated." [*Id.* at ¶39.] After much back and forth between CVPD officers and Mr. Enriquez, Mr. Enriquez informed CVPD officers that he had a gun. [*Id.* at ¶¶40-50.] Mr. Enriquez was shot with a bean bag round and thereafter, picked up his gun, at which time Defendant Officers Perdomo, Buyson, and Luhta fired their weapons at Mr. Enriquez. [*Id.* at ¶¶57-64.] Thereafter, a police K-9 was released to move Mr. Enriquez from his weapon. [*See id.* at ¶66.]

Notwithstanding that, as detailed above, Mr. Watts' death was *not* due to the actions of CVPD officers, the two incidents are also *not* substantially similar. [*See* § 2(C), *supra*.] In the Watts Incident, Mr. Watts was unarmed, in contrast to this incident where Plaintiffs admit that Mr. Enriquez was in possession of a gun. [*Compare* Dkt. 33 at 9:11-12 *with* Dkt. 24 at ¶50.] The Watts Incident also did *not* involve any of the uses of force at-issue in this matter: there was *no* K-9 use of force; *no* use of bean bag rounds; and *no* use of lethal force. [*Compare* § 2(C), *supra with* Dkt. 24 at ¶¶40-50, 57-64, 66.] In fact, during the Watts Incident, the only uses of

force by Defendant Officer Luhta was deployment of his TASER and manual restraint, which are *not* at issue in this matter *at all*. [*Id.*]

Despite the fact that the Watts Incident was a totally different situation than the one faced by Defendant Officers at-issue in this matter, Plaintiffs attempt to create a similarity solely towards the fact that both Mr. Enriquez and Mr. Watts were having mental health issues when CVPD officers responded, but even those are not substantially similar: Mr. Enriquez was intoxicated by alcohol (a depressant) and purportedly suffered from depression and PTSD (Dkt. 24 at ¶¶26-27), while Mr. Watts was high on methamphetamine (a stimulant) and he was acting strangely (*see* § 2(C), *supra*; Dkt. 24 at ¶155). Such dissimilarities also negate any probative value in the Watts Incident's ability to show a policy or widespread, longstanding custom/practice of excessive deadly force shootings or excessive force K-9 deployments, or related alleged supervisory deliberate indifference and, thus, negates any *Monell* discoverability.[2]

Thus, because of these substantial differences between the Watts Incident and the Enriquez Incident, the Watts Incident records are not discoverable, and this Court should thus deny Plaintiffs' motion to compel such records because they are not likely to make a fact at consequence in this action more or less probable and such discovery is not proportional to the needs of the case under applicable law.

**5. THE NUNIS INCIDENT IS NOT SUBSTANTIALLY SIMILAR TO THIS MATTER AND IT IS THUS NOT DISCOVERABLE.**

Plaintiffs claim that records related to the Nunis Incident "are relevant to [Defendant Sergeant] Linney's experience, judgment, training, discipline and the

---

[2] It is also worth noting that the records pertaining to the Watts Incident are voluminous and would likely prompt Plaintiffs to cast an even wider net for written discovery and depositions: discovery that would be unduly burdensome on Defendants (basically doubling or tripling the amount of discovery already required for this case), and thus such cannot be proportional to the needs of *this* case.

City's knowledge of prior in-custody death incidents involving its officers" and "are also relevant to the City's *Monell* liability" because "Plaintiffs allege that the City failed to investigate and discipline officers for prior excessive force and in-custody death incidents, and the City's promotion or retention of officers despite constitutional violations encouraged excessive force and increased the risk of death." [Dkt. 33 at 10:22-11:1.]

However, Plaintiffs' relevancy arguments fail to hold water in light of the fact that a jury already determined that the CVPD officers involved in the Nunis Incident, including Defendant Linney, used reasonable force, and did not violate Mr. Nunis' constitutional rights. [Exhs. B, C.] Such records cannot and do not support Plaintiffs' allegations of a pattern and practice of wrongdoing because there was <u>no</u> wrongdoing when it came to the Nunis Incident. [*See id*; § 2(D) *supra*.]

Moreover, as with the Watts Incident, the Nunis Incident is not substantially similar to the subject matter. The Nunis Incident solely involved the use of manual restraint and Mr. Nunis was unarmed during the incident: there were no impact weapon or beanbag deployments, no K-9 deployments, and no shootings during the Nunis Incident. [*See* § 2(D), *supra*.] Moreover, during the Nunis Incident, Defendant Sergeant (then-Agent) Linney was the first responding officer, *not* a supervisor, as he is here. [*Id.*] Here, Plaintiffs' admitted allegations against Defendant Sergeant Linney are solely in his supervising capacity and that he "abdicated responsibility, failed to control tactical decisions, allowed Perdomo to assume command, allowed confusing commands and escalation, and failed to intervene even after the shooting when a K-9 was released on Mr. Enriquez." [Dkt. 33 at 10:18-22.] But Defendant Linney's actions during the Nunis Incident have no bearing on his purported wrongdoing during the subject incident, even from a supervisory perspective, where he was not the on-scene supervisor for the Nunis Incident.

Put simply, particularly where it is an adjudicated fact that, after reviewing evidence showing the restraint force used to overcome Mr. Nunis' violent resistance

did not cause or contribute to his exertion-induced metabolic acidosis death, a federal jury determined that the CVPD officers in that case (including then-Agent Linney) used only reasonable force, such prior restraint incident cannot possibly constitute Rule 26-relevant evidence of any policy or widespread/longstanding custom or practice of using excessive force by bean bag deployments, K-9 deployments, or police shootings, or any associated alleged deliberate indifference toward adequate supervision of such.[3]

Accordingly, this Court should also deny Plaintiffs' motion to compel records related to the Nunis Incident.

**6. DEFENDANT OFFICER LUHTA'S APRIL 9, 2020 K-9 DEPLOYMENT IS NOT SUBSTANTIALLY SIMILAR TO THIS MATTER.**

Plaintiffs' only allegations against Defendant Officer Luhta in this matter pertain to Defendant Officer Luhta's use of excessive force in shooting Mr. Enriquez during the subject incident; *not* to any K-9 deployment. [*See generally* Dkt. 24.] Defendant Officer Luhta was not involved in the deployment of the K-9 in this incident. [*See id.* at ¶66.] Moreover, Officer Luhta's April 9, 2020 K-9 deployment did not involve circumstances similar to the incident involving Mr. Enriquez. Rather, that incident involved an *un*armed woman who was having a mental breakdown. [[McLaughlin Decl., ¶9.] The only other uses of force in that prior incident (not by Officer Luhta) were manual restraint. [*Id.*] Thus, Officer Luhta's deployment of a K-9 under such dissimilar circumstances have no bearing on Plaintiffs' allegations that *another* officer's deployment of a K-9 *after* an admittedly *armed* suspect was

[3] It is also worth noting that the records pertaining to the Nunis Incident, like those pertaining to the Watts Incident, are voluminous would likely prompt Plaintiffs to cast an even wider net for written discovery and depositions: discovery that would be unduly burdensome on Defendants (basically doubling or tripling the amount of discovery already required for this case), and thus such cannot be proportional to the needs of *this* case.

shot, with such K-9 deployment aimed to separate the suspect from his weapon, was improper and this Court should deny Plaintiffs' motion to compel these records.

However, solely in the alternative, if the Court is included to grant Plaintiffs' motion to compel as to these records, Defendants are willing to present the at-issue records for *in camera* review. For the Court's information, the entirety of the withheld records for this other-incident (CVPD Complaint/Disposition Report PS #20-0828) is 15 pages. [*Id.*]

**7. THE OTHER WITHHELD I.A. INVESTIGATION RECORDS DO NOT CONTAIN RELEVANT MATERIAL.[4]**

**A. Defense Counsel Personally Reviewed the Withheld Records and Confirmed None of the Investigations Included Allegations or Even Inferences of Dishonesty.**

Much of Plaintiffs' arguments are premised on their incorrect assumption that defense counsel did not personally review the withheld IA Investigation records when defense counsel did so. [§ 2(B), *supra*.] Thus, because defense counsel has attested that none of the at-issue IA Investigation records included allegations or inferences of dishonesty (McLaughlin Decl., ¶4), such representations can and should be relied upon. *See Han v. Futurewei Techs., Inc.*, 2011 WL 4344301, at *5 (S.D. Cal. Sept. 15, 2011) (The discovering party must generally "rely on the representations of the producing party or its representative that it is producing all responsive, relevant, and non-privileged discovery.... That is the way our 'good faith' discovery system works.").

---

[4] Plaintiffs appear to no longer be seeking production of (1) a January 17, 2025 incident involving a traffic collision that occurred while Officer Perdomo was on-duty in his patrol vehicle; and (2) a July 23, 2018 incident involving Officer Luhta backing into a safety pole in his patrol vehicle. [Dkt. 33 at p. 12, fn. 1; *see id.* at 11:28-12:2, 12:16 (Plaintiffs reference the on-duty collision, but fail to make any argument regarding production of the same).

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Notwithstanding the above, in good faith, Defendants provide further details regarding the at-issue documents to demonstrate that Plaintiffs' presumption that the remaining at-issue IA Investigation records "potentially involv[e] issues relating to defendant officers' dishonesty or attempts to cover up misconduct." [Dkt. 11:28-12:2.]

First, the May 25, 2024 IA Investigation pertaining to Officer Perdomo's failure to activate his body worn camera has no bearing on Officer Perdomo's purported dishonesty or attempt to cover up misconduct because it was determined Officer Perdomo's failure to activate his body worn camera was not a full failure to activate, but a late activation and was not purposeful. [McLaughlin Decl. ¶10.] Moreover, the supervisor's instruction as to turning on body worn cameras prior to taking enforcement action was not during the at-issue incident, but pertaining to if Officer Perdomo had *ever* been given such instruction, which Officer Perdomo confirmed he had. [*Id.*]

Second, the October 17, 2018 IA Investigation incident pertaining to Officer Perdomo's verification that a traffic violation had been corrected by a third party did <u>not</u> deal with Officer Perdomo knowingly submitting a false report. [McLaughlin Decl., ¶11.] Rather, Officer Perdomo signed off on a traffic citation for having tinted windows (a "fix-it" ticket) believing that the violation would be corrected. [*Id.*] When Officer Perdomo discovered such had not occurred, Officer Perdomo immediately contacted his supervising officer about the incident, and it was found Officer Perdomo *was* forthcoming and he did not attempt to be deceptive or deceitful in regards to the incident *at all*. [*Id.*]

Third and finally, the February 13, 2020 IA Investigation incident pertaining to Officer Luhta's recording of a conversation also did not involve dishonesty or intentional disregard of legal limits, as erroneously presumed by Plaintiffs. [McLaughlin Decl., ¶12.] While Officer Luhta did record a conversation with permission from only one-party, the other party admitted halfway through the

conversation that they knew they were being recorded and did not care, and continued their conversation while knowing of the recording. [*Id.*] Additionally, this conversation did not deal with a criminal investigation or any of Plaintiffs' allegations in this matter in any way. [*Id.*]

Accordingly, the above-identified IA Investigation records are not relevant and not discoverable in this matter because they are not substantially similar to the at-issue incident and they do not infer or relate to officer dishonesty. This Court should thus deny Plaintiffs' motion to compel these records.[5]

Solely in the alternative, if this Court does not believe that defense counsel's representations and Defendants' further details are enough to determine whether the above-identified IA Investigation records are not relevant and not discoverable, Defendants will submit the at-issue records for *in camera* review. For the Court's information, the entirety of the withheld records (CVPD Complaint/Disposition Report PS #24-9131 – 17 pages; CVPD Complaint/Disposition Report PS #18-1021 – 17 pages; CVPD Complaint/Disposition Report PS #20-1369 – 5 pages) is 39 pages.

**B. The Remaining Personnel Records Unrelated to Officer Uses of Force Are Also Privacy Privileged and Irrelevant.**

To the extent Plaintiffs still seek the production of an officer's "entire" personnel file, it is well established that the Rule 26 relevancy/proportionality principles and the federal privacy privilege prohibit such discovery: unless a law enforcement officer's personnel file records pertaining to a prior incident of misconduct that is substantially and specifically similar to the alleged misconduct at issue in the subject litigation. *Winn v. Cappalla*, 2024 WL 5275070, at *4 (C.D. Cal.

---

[5] Plaintiffs include argument about official-information privilege, privacy, and confidentiality concerns. As it is Defendants' understanding that records ordered to be produced per Plaintiffs' Motion to Compel (if any) would be pursuant to the Parties' Protective Order, Defendants' opposition is limited to lack of relevance and/or discoverability of the subject records.

Sept. 13, 2024) ("A request for an entire personnel file is overly broad and burdensome.") (citing *Baugh v. Martin*, 2023 WL 2628611, at *3 (C.D. Cal. Feb. 9, 2023) (finding that request for entire personnel file was "disproportionate to the needs of the case"); *Hernandez v. Cate*, 2013 WL 12497042, at *1 (C.D. Cal. Dec. 12, 2013) ("Plaintiff has not demonstrated that defendants' entire prison personnel files are relevant or reasonably calculated to lead to the discovery of admissible evidence in this regard, or that the likely benefit of that discovery outweighs the burden and expense of its production.")).

Thus, to the extent Plaintiffs seek any other officer personnel file records or associated other-incident records not specified herein above, the Court should also deny production/discovery as to those records as well.

**8. CONCLUSION.**

Based on the foregoing, Defendants request this Court deny Plaintiffs' Motion to Compel in its entirety. Defendants do not request sanctions against Plaintiffs.

DATED: September 3, 2026

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Abigail J.R. McLaughlin*

TONY M. SAIN
TORI L. N. BAKKEN
ABIGAIL J. R. McLAUGHLIN
Attorneys for Defendants,
THE CITY OF CHULA VISTA, Chief ROXANA KENNEDY, Officer ALFONSO PERDOMO, Officer ROMAN BUYSON, and Officer THOMAS LUHTA

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

**FEDERAL COURT PROOF OF SERVICE**
Maria Enriquez, et al. v. The City of Chula Vista, et al.
USDC Case No. 2:25-CV-3832-BTM-DEB

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On September 3, 2026, I served the following document(s): DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF WITHHELD ADMINISTRATIVE INVESTIGATIONS REGARDING DISSIMILAR NON-INCIDENTS [DKT. 33]

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on September 3, 2026, at Los Angeles, California.

/s/ Corinne Taylor
Corinne Taylor

**SERVICE LIST**
**Maria Enriquez, et al. v. The City of Chula Vista, et al.**
**USDC Case No. 2:25-CV-3832-BTM-DEB**

| | |
|---|---|
| Steve Hoffman (SBN 237466)<br>Law Office of Steve Hoffman, APC<br>770 First Avenue, Suite 250<br>San Diego, CA 92101<br>Telephone: 619.677.3015<br>Facsimile: 888.320.9384<br>Email: shoffmanlaw@gmail.com<br>admin@stevehoffman.lawver | Attorneys for Plaintiffs Maria Enriquez, Aleyna Enriquez, Miguel Enriquez, and the Estate of Carlos Enriquez |
| Eugene Iredale (SBN 75292)<br>Julia Yoo (SBN 231163)<br>IREDALE & YOO, APC<br>105 West F Street, Fourth Floor<br>San Diego, CA 92101-6036<br>Telephone: 619.233.1525<br>Facsimile: 619.233.3221<br>Email: egiredale@iredalelaw.com<br>jyoo@iredalelaw.com<br>admin@iredalelaw.com<br>creherman@iredalelaw.com<br>pbibring@iredalelaw.com<br>sbrockett@iredalelaw.com<br>smusumeci@iredalelaw.com<br>contact@iredalelaw.com | Attorneys for Plaintiffs Maria Enriquez, Aleyna Enriquez, Miguel Enriquez, and the Estate of Carlos Enriquez |