**LEWIS BRISBOIS BISGAARD & SMITH LLP**
TONY M. SAIN, SB# 251626
E-Mail: Tony.Sain@lewisbrisbois.com
TORI L. N. BAKKEN, SB# 329069
E-Mail: Tori.Bakken@lewisbrisbois.com
ABIGAIL J. R. McLAUGHLIN, SB# 313208
E-Mail: Abigail.McLaughlin@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants,
THE CITY OF CHULA VISTA, Chief ROXANA KENNEDY, Officer ALFONSO PERDOMO, Officer ROMAN BUYSON, Officer THOMAS LUHTA, and Sergeant EVAN LINNEY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARIA ENRIQUEZ, ALEYNA ENRIQUEZ, MIGUEL ENRIQUEZ, and THE ESTATE OF CARLOS ENRIQUEZ,,

Plaintiff,

vs.

THE CITY OF CHULA VISTA, ROXANA KENNEDY, in her individual capacity, ALFONSO PERDOMO, ROMAN BUYSON, THOMAS LUHTA and DOES 1-25,

Defendant.

Case No. 25CV3832 BTM DEB
[*Hon. Barry T. Moskowitz, Dist. Judge; Hon. Daniel E. Butcher, M. Judge]*

[***DISCOVERY MATTER***]

**DECLARATION OF ABIGAIL J. R. MCLAUGHLIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF WITHHELD ADMINISTRATIVE INVESTIGATIONS REGARDING DISSIMILAR NON-INCIDENTS**

I, Abigail J. R. McLaughlin, declare as follows:

1. I am an attorney duly admitted to practice in all of the courts of the State of California and I am a partner with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for Defendants THE CITY OF CHULA VISTA, Chief ROXANA KENNEDY, Officer ALFONSO PERDOMO, Officer ROMAN BUYSON, Officer THOMAS LUHTA and Sergeant EVAN LINNEY ("Defendants") herein. The facts

set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2. On August 20, 2026, Plaintiffs' counsel Steve Hoffman and I exchanged e-mail correspondence regarding a meet and confer as to the Parties' discovery dispute in this matter, which included my confirmation that none of the withheld Internal Affairs ("IA") investigations involved allegations or inferences of dishonesty. Attached hereto as Exhibit "A" is a true and correct copy of that e-mail correspondence.

3. After my response to Mr. Hoffman on August 20, 2026 at 5:45 p.m., I received no further communications from Defendants regarding the subject discovery dispute other than Plaintiffs' filing of the subject Motion to Compel on August 28, 2026.

4. If Plaintiffs had responded – whether by seeking clarification as to who reviewed and made the determinations regarding the withheld IA investigations or by setting a time for the meet and confer – I would have confirmed that I had personally reviewed the IA investigations and determined that none of the withheld documents contained any inference that could be drawn related to dishonesty. Specifically, on August 14, 2026, I personally reviewed each of the at-issue IA Investigations to determine if any contained inferences that could be drawn related to dishonesty. After I personally determined they did not, I conferred with other defense counsel, including lead counsel Tony Sain and handling attorney Tori Bakken, who were in agreement with my determination.

5. I have also personally reviewed records related to the October 8, 2018 incident involving Chula Vista Police Department ("CVPD") officers, including Defendant Officer Thomas Luhta, and Jason Watts (the "Watts Incident"). Based on my review of those records, the Watts Incident involved uses of force by CVPD officers that included multiple TASER deployments, pepper spray, baton hits, punches, and manual restraint. Defendant Officer Luhta personally deployed his

TASER and applied manual restraint, including assisting with applying a WRAP device. None of the uses of force in the Watts Incident involved a beanbag deployment, a K-9 deployment, or an officer-involved shooting ("OIS").

6. Also based on my review of records related to the Watts Incident, Mr. Watts' cause of death was methamphetamine intoxication and excited delirium. Moreover, Mr. Watts did not die until eight hours after the CVPD's uses of force; where, in the interim, he was medically cleared to be taken to jail, then transported to a hospital for evaluation after presenting with altered mental status, at which point he was given Ativan to calm him down, and then he suffered cardiac arrest.

7. Defense counsel Tony Sain, Tori Bakken, and I represented Defendants in *Nunis, et al. v. Chula Vista, et al.*, U.S. Dist. Ct. S.D. Cal. Case No. 21-CV-1627 TWR (DEB) (the "*Nunis* matter"), which involved a March 13, 2020 incident between CVPD officers and Oral Nunis (the "Nunis Incident"). The Nunis Incident involved uses of force by CVPD officers, but those uses of force, including all uses of force by Defendant Sergeant (then-Agent) Linney, were only manual restraint. Specifically, Mr. Nunis was subjected only to manual restraint/grappling, and the use of two restraint devices (rear handcuffs and the WRAP "full body" restraint device) and use of a spit sock, after Mr. Nunis had violently resisted officers' restraints (and defied their commands) for over 10 minutes. Mr. Nunis was not subjected to any blows or impact weapons; no K-9 was deployed on him; and there was no shooting. Further, Mr. Nunis did not begin experiencing a medical emergency until ~8 minutes after any CVPD officers' use of grappling/manual force. Additionally, then-Agent Linney was not the on-scene supervisor/sergeant for the Nunis Incident.

8. The *Nunis* matter resulted in a full defense verdict at trial: where – after reviewing extensive evidence showing that the officers' restraint had not caused or contributed to Mr. Nunis' death – the jury unanimously determined that none of the defendant officers, including Linney, used excessive or unreasonable force or restraint on Mr. Nunis and, thus, they had not violated Mr. Nunis' constitutional rights. A true

and correct copy of the Special Verdict Form in the *Nunis* matter is attached hereto as Exhibit "B" and a true and correct copy of the Judgment in the *Nunis* matter is attached hereto as Exhibit "C".

9. As part of my review of the withheld IA investigations, I reviewed the records pertaining to Officer Luhta's April 9, 2020 K-9 deployment. The incident involved an unarmed woman who was having a mental breakdown. The only other uses of force in that prior incident (not by Officer Luhta) were manual restraint. The entirety of the withheld records for this April 9, 2020 incident (CVPD Complaint/Disposition Report PS #20-0828) is 15 pages.

10. As part of my review of the withheld IA investigations, I also reviewed the May 25, 2024 IA Investigation pertaining to Officer Perdomo's failure to activate his body worn camera. That IA Investigation determined Officer Perdomo's failure to activate his body worn camera was not a full failure to activate, but a late activation and was not purposeful. Moreover, the supervisor's instruction as to turning on body worn cameras prior to taking enforcement action was not during the at-issue incident, but pertaining to if Officer Perdomo had ever been given such instruction, which Officer Perdomo confirmed he had. The entirety of the withheld records for this May 25, 2024 IA Investigation (CVPD Complaint/Disposition Report PS #24-9131) is 17 pages.

11. As part of my review of the withheld IA investigations, I also reviewed the October 17, 2018 IA Investigation incident pertaining to Officer Perdomo's verification that a traffic violation had been corrected by a third party. Officer Perdomo signed off on a traffic citation for having tinted windows (a "fix-it" ticket) believing that the violation would be corrected. When Officer Perdomo discovered such had not occurred, Officer Perdomo immediately contacted his supervising officer about the incident, and it was found Officer Perdomo *was* forthcoming and he did not attempt to be deceptive or deceitful in regards to the incident *at all*. The entirety of the withheld records for this October 17, 2018 incident (CVPD

Complaint/Disposition Report PS #18-1021) is 17 pages.

12. As part of my review of the withheld IA investigations, I also reviewed February 13, 2020 IA Investigation incident pertaining to Officer Luhta's recording of a conversation. While Officer Luhta did record a conversation with permission from only one-party, the other party admitted halfway through the conversation that they knew they were being recorded and did not care, and continued their conversation while knowing of the recording. Additionally, this conversation did not deal with a criminal investigation or any of Plaintiffs' allegations in this matter in any way. The entirety of the withheld records for this February 13, 2020 incident (CVPD Complaint/Disposition Report PS #20-1369) is 17 pages.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this 3rd day of September, 2026, at Los Angeles, California.

*/s/ Abigail J.R. McLaughlin*
Abigail J. R. McLaughlin